UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

JUN 2 5 2019

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CARL NAPPER,<br><br>Defendant. | Criminal No. 1:19-MJ-285<br><br>**UNDER SEAL** |

**AFFIDAVIT IN SUPPORT OF
A CRIMINAL COMPLAINT AND ARREST WARRANT**

I, Shervin Dhanani, a Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), being first duly sworn, hereby depose and state as follows:

1. I have been a SA with ATF since August 2015. I am currently a member of the ATF Boston Field Division's Boston Group II. My assignments include investigating individuals who are involved in the illegal possession and transfer of firearms, violent crimes involving firearms, and narcotics and firearms trafficking. Prior to joining ATF, I served as a Special Agent with the Diplomatic Security Service for six (6) years. I am also a graduate of the ATF Special Agent Basic Training program and the Federal Law Enforcement Training Center in Glynco, Georgia.

2. During the course of my career in law enforcement, I have participated in investigations of individuals and entities for possible violations of federal laws, particularly those laws found in Title 18 and Title 21 of the United States Code.

3. I submit this affidavit in support of a criminal complaint and arrest warrant charging Carl NAPPER ("NAPPER") with making false statements in relation to the purchase of a firearm, in violation of Title 18, United States Code, Section 924(a)(1)(A).

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement officials, and witnesses. All observations I did not personally make were related to me by the individuals who made them, or come from my review of records, documents, and other physical evidence obtained during the course of this investigation. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

5. Through my training and experience, I am aware that federal law prohibits federal firearms licensees ("FFLs") from selling a firearm to a non-licensee purchaser "unless the [FFL] records the transaction on a firearms transaction record, Form 4473." 27 C.F.R. § 478.124(a). I am further aware that the law requires FFLs to retain "as a part of the required records, each Form 4473 obtained in the course of transferring custody of the firearms." 27 C.F.R. § 478.124(a). Accordingly, any false statement a purchaser makes on a Form 4473 pertains to information an FFL is required by law to maintain.

A. <u>Recovery of a Firearms Purchased by NAPPER from Virginia Arms Company</u>

6. In or around January 2017, an ATF SA received information that, on or about December 28, 2016, one Keltec model PF-9, 9mm semiautomatic pistol, bearing serial number ("SN") RVN45 (the "Keltec firearm") was recovered from Kenny ROMERO ("ROMERO") in Boston, Massachusetts, during a vehicle stop conducted by the Boston Police Department

("BPD") of a vehicle being operated by ROMERO. ROMERO was subsequently arrested and charged with illegal possession of a firearm and narcotics. During a search of the vehicle incident to ROMERO's arrest, BPD officers recovered oxycodone hydrochloride pills, marijuana, and a scale.

7. The ATF National Tracing Center (NTC) determined that NAPPER purchased the Keltec firearm less than a month earlier, on November 30, 2016, from the FFL Virginia Arms Company, in Manassas, Virginia, within the Eastern District of Virginia, as part of a multiple sale of firearms. At that time, NAPPER also purchased a second firearm, a Ruger Model LCP .380 caliber semiautomatic pistol, bearing SN 371819078 (the "Ruger firearm"), which NAPPER also provided to ROMERO. The Ruger firearm was not recovered from ROMERO and, at this time, its whereabouts are unknown.

8. On or about March 22, 2017, BPD's Firearms Analysis Unit determined, through ballistics testing, that the Keltec firearm was fired at least once during a shooting incident that occurred, on or about December 21, 2016. Specifically, a victim of the incident reported to BPD that an unknown male raised a firearm and fired one round in the victim's direction. BPD officers recovered one shell casing from the scene of the crime, which, upon comparison, BPD determined was fired from the Keltec firearm.

B. ATF Interview of NAPPER

9. On or about February 14, 2018, your affiant interviewed NAPPER at his residence in Woodbridge, Virginia, within the Eastern District of Virginia. During the interview, your affiant presented NAPPER with a copy of the ATF Form 4473, Firearms Transaction Record Part 1, recovered from the November 30, 2016 sale of the Keltec firearm and the Ruger firearm from Virginia Arms Company. After reviewing the form, NAPPER indicated that he filled out the form

and that the handwriting on the form belonged to him. Furthermore, NAPPER stated that he checked the "yes" box next to question # 11(a) on the form, which asked if NAPPER was the actual transferee/buyer of the firearm(s) listed on the form. NAPPER also verified that his signature was in block 16 of the form. For this purchase, NAPPER was required by law to truthfully fill out ATF Form 4473, including in his response as to whether he was the actual buyer of the firearm listed for purchase. On Section 14 of each ATF Form 4473, NAPPER certified by signature that his answers on the form were "true, correct, and complete," and that he understood that "making any false oral or written statement, or exhibiting any false or misrepresented identification with respect to [the] transaction, is a crime punishable as a felony under Federal law."

10. Later in the interview, NAPPER admitted that he was, in fact, not the actual purchaser of the firearms documented on the referenced ATF Form 4473. NAPPER stated that he had actually purchased both the Keltec and Ruger firearms for ROMERO in exchange for $300. NAPPER stated that ROMERO and another acquaintance accompanied NAPPER to the firearms dealer and that ROMERO provided him the cash outside the store with which to purchase the firearms. NAPPER stated that he gave both firearms to ROMERO immediately following the purchase.

11. NAPPER stated that he had known ROMERO for several years. NAPPER was shown a Massachusetts driver's license photograph of ROMERO and NAPPER indicated that the person in the photograph is the individual known to him as "Kenny" and for whom NAPPER previously purchased the Keltec and Ruger firearms.

12. Before the conclusion of the interview, NAPPER voluntarily filled out and signed an affidavit on ATF form 3270.21. In the affidavit, NAPPER stated that he purchased two firearms for ROMERO in exchange for $300 and that he filled out the ATF form 4473 that was

shown to him by ATF.

  C. <u>ATF Interview of Virginia Arms Company Witness</u>

  13. On or about May 4, 2018, ATF SAs interviewed a sales associate (hereinafter "Witness 1") at Virginia Arms Company, regarding the purchase of two pistols by NAPPER, on November 30, 2016.

  14. Witness 1 stated that he remembered two persons coming into the store during the evening hours around 6:00 p.m. Witness 1 said that this specific transaction stood out to him because, upon entering the store, the two individuals only focused on looking at lower priced pistols, they did not appear to waste any time in locating and buying the firearms, and, when the buyer eventually purchased two similar pistols, both of them were equipped with laser sights.

  15. Witness 1 was shown a photo array of eight photographs, including one photograph [number 6] of ROMERO. After reviewing the photo array, Witness 1 said he recognized the individual in photograph six and initialed and dated picture six in the photo array.

  D. <u>ROMERO's Call Detail Records and Historical Cell Site Analysis</u>

  16. Based on my review of law enforcement databases and the telephone number ROMERO provided at the time of his arrest by the BPD, your affiant identified ROMERO's cellular telephone number as (202) 793-0127.

  17. On November 2, 2018, a federal search warrant was issued from the District of Massachusetts for the T-Mobile telephone number (202) 793-0127, to include subscriber information, call detail records, and historical cell site information from on or about November 1, 2016, to on or about January 1, 2017.

  18. Based on my review of the records returned by T-Mobile for the (202) 793-0127 telephone number, I was able to determine that the account was subscribed to an individual who

shared the same listed address as ROMERO in Boston. Upon further investigation, your affiant learned that the subscriber was ROMERO's mother's boyfriend who stated that the number was most likely used by ROMERO or ROMERO's mother.

19. Your affiant was also able to ascertain ROMERO's approximate locations on or about November 30, 2016 (the date on which NAPPER purchased the Keltec firearm that was recovered from ROMERO by the BPD), and on or about December 21, 2016 (date that a spent shell casing from the Keltec firearm was recovered by BPD). Specifically, the Virginia Arms Company sales receipt documenting the purchase of the Ruger and Keltec firearms lists that the firearms transaction took place on November 30, 2016, at 6:28p.m. Based on my review of ROMERO's call detail records, I know this sale occurred approximately one hour and twenty minutes after an outgoing telephone call made in Virginia from the (202) 793-0127 telephone number associated with ROMERO to NAPPER's cellular telephone.

20. A preliminary analysis of the historical cell site records for telephone number (202) 793-0127 revealed that, from on or about November 29, 2016, to on or about November 30, 2016, the phone connected to towers in the greater Boston area, then to towers in Maryland, followed by towers in Washington, D.C., and finally to a tower in Virginia. Then, from on or about December 1, 2016, to on or about December 2, 2016, telephone number (202) 793-0127 connected to a tower in Virginia, then a tower in Washington, D.C., followed by a tower in Maryland, two towers in Connecticut, and finally a tower in the greater Boston area. These records demonstrate that a telephone associated with ROMERO traveled from Boston, and was in Virginia on the same date that NAPPER purchased the Keltec and Ruger firearms (November 30, 2016), before traveling back to Boston.

21. On or about March 14, 2018, an ATF SA examined the Keltec firearm and

determined that it constitutes a firearm, pursuant to Title 18, United States Code, Section 921(a)(3), was not manufactured in the Commonwealth of Virginia and, therefore, the firearm traveled in, and/or affected interstate commerce.

## CONCLUSION

22. Based on the forgoing information in this affidavit, I submit that probable cause exists to believe that NAPPER made false statements in relation to the purchase of a firearm, on or about November 30, 2016, in violation of 18 U.S.C. § 924(a)(1)(A).

Respectfully submitted,

_____
Shervin Dhanani, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn and subscribed to before me this 25 day of June, 2019

_____/s/_____
Michael S. Nachmanoff
United States Magistrate Judge
The Honorable Michael S. Nachmanoff
United States Magistrate Judge

7